IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CLYDE EARNEST DOUGLAS,** <br> **# 272104,** <br> <br> Plaintiff, <br> <br> vs. <br> <br> **DEPUTY KYLE FALDOSKI,** *et al.*, <br> <br> Defendants. | * <br> * <br> * <br> * <br> * CIVIL ACTION NO. 22-00079-CG-B <br> * <br> * <br> * <br> * <br> * |

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiff Clyde Earnest Douglas's third amended complaint.[1] (Doc. 20). Douglas, proceeding *pro se*, commenced this § 1983 action while in custody at the Baldwin County Sheriff's Corrections Center.[2] (See Doc. 1). While at the Baldwin County Sheriff's Corrections Center, Douglas paid the $402 filing and administrative fees. (Doc. 6). He was later transferred to the custody of the Alabama Department of Corrections and moved to Staton Correctional Facility. (See

---

[1] This action has been referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).

[2] Claims brought by a pretrial detainee for medical care arise under the Fourteenth Amendment, but the standard for determining a violation are the same as a violation for the Eighth Amendment. Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017). Thus, Eighth and Fourteenth Amendment cases will be used interchangeably in this report and recommendation.

Doc. 10).

Upon screening Douglas's third amended complaint (Doc. 20), it is recommended that his claims against Defendants Quality Corrections Health Care and South Baldwin Regional Medical Center be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**I. Nature of Proceedings and Third Amended Complaint (Doc. 20).**

Upon screening Douglas's original complaint under 28 U.S.C. § 1915A, the undersigned determined that the complaint was frivolous because Douglas named as defendants entities that are not suable. (Doc. 9 at 5). Thereupon, Douglas was granted leave to file an amended complaint that named as defendants "individuals/entities that can be sued." (Id.).

Douglas filed his first amended complaint against Baldwin County Sheriff's Deputy Kyle Faldoski and Quality Corrections Health Care. (Doc. 11). After screening this pleading, the undersigned issued a report and recommendation recommending that Douglas's claims against Defendant Quality Corrections Health Care ("Quality") be dismissed for failure to state a claim and that he be granted leave to file another amended complaint for the purpose of stating a claim against Quality. (Doc. 14). The report and recommendation informed Douglas of the requirements for stating a § 1983 claim against a corporate medical provider and directed him

2

to use the Court's complaint form for a § 1983 prisoner action if he filed an amended complaint. (Id. at 6-9). The report and recommendation also advised that the claims against Defendant Faldoski would proceed and thus, he would be served.[3] (Id. at 3).

Douglas filed a motion for leave to amend his complaint and a self-styled second amended complaint against Faldoski, Quality, and South Baldwin Regional Medical Center ("South Baldwin"). (Docs. 15, 16). Douglas's motion was granted, and the report and recommendation was withdrawn. (Docs. 17, 18). However, because Douglas did not file the second amended complaint on the Court's § 1983 complaint form, he was ordered to file a third amended complaint on the Court's § 1983 complaint form and was advised that it would be his operative complaint against Defendants Quality and South Baldwin. (Doc. 18 at 2-3). Douglas was also provided pleading directives for stating a § 1983 medical claim against Defendants Quality and South Baldwin. (Id. at 3-6).

Douglas filed a third amended complaint against Defendants Faldoski, Quality, and South Baldwin. (Doc. 20). In the third amended complaint, Douglas complains that on December 30, 2021, an unknown ER doctor at South Baldwin took x-rays and found that his right arm had a compound fracture above the wrist, which was

---

[3] Defendant Faldoski was served with the first amended complaint (Docs. 12, 19), and he filed his special report with answer on December 7, 2022. (Docs. 24, 25).

treated with a splint cast and wrapped with an Ace bandage. (Id. at 6, 8). Douglas maintains that it was clear he required surgery, or at least a hard cast, but he was nevertheless released into the custody of Defendant Faldoski and booked into the jail with no follow-up orders. (Id.). Douglas maintains that his treatment was substandard because a bone could have broken the skin or ruptured a vein and no follow-up order with a "bone and joint doctor" was given. (Id. at 8).

Douglas alleges that at the jail, he could feel his bones moving around, which caused him more pain, but he was only given Tylenol. (Id. at 8-9). According to Douglas, from December 30, 2021 to January 12, 2022, he complained numerous times to the nurses and filed sick call requests, but he was denied medical treatment for his compound fracture. (Id. at 5, 9). He asserts that his sister finally called Sheriff Mack complaining that he was not receiving medical treatment and that she would hire a lawyer and file suit. (Id.). Douglas alleges that the next day, January 12, 2022, he was seen by Dr. Frank Fondren, who took x-rays that revealed a compound fracture, and Dr. Fondren performed surgery the following day to repair Douglas's arm. (Id. at 9). Douglas claims that it was apparent even to the untrained eye that his arm was broken and in need of treatment, so for Quality and South Baldwin to ignore his serious medical need was deliberate

4

indifference. (Id. at 9-10).

Douglas contends that if he was not an inmate, he would have received different treatment and would have been treated more quickly than thirteen days. (Id. at 10). He contends that "they" hoped that he would make bond, so "they" would not have to pay for the surgery, which he asserts is "an easier but less efficacious course of treatment." (Id. at 11). According to Douglas, "when [he] did not make bond[, they] only acted after being threatened by [his] sister." (Id.).

Douglas seeks $250,000 in punitive damages, payment of his medical bills and compensation for future surgeries, and the termination of Defendant Faldoski. (Id. at 7).

**II. Legal Standards for Screening Under 28 U.S.C. § 1915A.**

The Court is screening Douglas's third amended complaint (Doc. 20) under 28 U.S.C. § 1915A, which provides for the dismissal of a complaint, or claims, against "a governmental entity or officer or employee of a governmental entity" that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b). This section's screening mechanism does not distinguish between a prisoner who pays the filing fee and one who proceeds *in forma pauperis*. Thompson v. Hicks, 213 F. App'x

939, 942 (11th Cir. 2007) (per curiam)[4]; Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam).

Under 28 U.S.C. § 1915A(b)(1), a claim may be dismissed as "frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). In addition, a complaint may be dismissed under § 1915A(b)(1) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief may be granted, the allegations must show plausibility. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

When considering a *pro se* litigant's allegations, a court gives them a liberal construction and holds them to a more lenient standard than those of an attorney, Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), but "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (citation and quotation marks omitted). Furthermore, a court treats factual allegations in a complaint as true, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. Iqbal, 556 U.S. at 681. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

**III. Discussion.**

As noted *supra*, the undersigned previously issued a report and recommendation recommending the dismissal of Douglas's claims against Quality for failure to state a claim because Douglas did not plead facts sufficient to state a claim against Quality. (Doc. 14 at 6-7). In the report and recommendation, Douglas was informed that he must allege that the medical provider's policy or custom violated his constitutional rights. (Id.). Furthermore, he was

7

advised that the corporate medical provider could not be held liable based solely on an employee's action. (Id. at 7). Thus, Douglas was on notice of what is required in order to state a claim against a corporate medical provider, such as Quality and South Baldwin, when he pleaded the third amended complaint. Nonetheless, the third amended complaint is pleaded in a manner that seeks to impose liability on Quality and South Baldwin based on the acts of their employees.

To state a claim against a corporate medical provider, Douglas was required to describe the provider's custom or policy that caused a deprivation of his constitutional rights. See Ort v. Pinchback, 786 F.2d 1105, 1107 (11th Cir. 1986) (per curiam) (holding provider could only be held liable when its policy or procedures caused a constitutional deprivation, and therefore it was not liable for the acts of its employees); accord Buckner v. Toro, 116 F.3d 450, 452-53 (11th Cir. 1997) (per curiam) (applying § 1983's municipality law to a corporate medical provider). Furthermore, a corporate medical provider cannot be held vicariously liable under § 1983 for its employee's actions. Brennan v. Thomas, 780 F. App'x 813, 821 (11th Cir. 2019) (per curiam).

The allegations in Douglas's third amended complaint do not identify a custom or policy of Quality or South Baldwin, much less

one that was applied to Douglas, that caused a violation of his constitutional rights. Rather, Douglas's allegations attribute action or inaction to unnamed individuals. For example, Douglas contends that the ER doctor at South Baldwin took x-rays of his arm and placed the arm in a splint cast but did not provide follow-up orders.[5] Douglas also asserts that the nurses at the jail did not give him medical treatment for twelve days despite him complaining to them and filing sick call requests with them even though an untrained person could see he needed medical treatment. Douglas asserts that they only gave him Tylenol. These complaints by Douglas only concern alleged shortcomings by individual employees, not failures by a corporate medical provider.

To state a § 1983 claim against a corporate medical provider, the plaintiff must allege that the provider "had a custom or policy

---

[5] The American Academy of Orthopaedic Surgeons explains:

> Casts and splints support and protect injured bones and soft tissue. When you break a bone, your doctor will put the pieces back together in the right position. Casts and splints hold the bones in place while they heal. They also reduce pain, swelling, and muscle spasm.
>
> In some cases, splints and casts are applied following surgery.
>
> Splints or half-casts provide less support than casts. However, splints can be adjusted to accommodate swelling from injuries easier than enclosed casts. Your doctor will decide which type of support is best for you.

https://orthoinfo.aaos.org/en/recovery/care-of-casts-and-splints/.

that caused a constitutional deprivation in order to satisfy the element of causation for his § 1983 claim." Id. at 822. And, to state a constitutional deprivation in the medical context against a corporate medical provider (or an individual), it must be alleged that "deliberate indifference to serious medical needs" occurred. Estelle v. Gamble, 429 U.S. 97, 103–04 (1976); see Brennan, 780 F. App'x at 822 (observing that a difference of opinion over medical treatment generally does not support a finding of deliberate indifference).

Inasmuch as Douglas's operative complaint does not identify a policy or custom of Defendants Quality and South Baldwin and does not show how the unidentified custom or policy caused him to suffer a constitutional deprivation, Douglas has failed to state a claim against Defendants Quality and South Baldwin.

Moreover, allegations that an individual "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [because] [m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Rather, "[m]edical treatment violates the prohibition against cruel and unusual punishment in the Eighth Amendment 'only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental

10

fairness.'" Sims v. Figueroa, 2022 U.S. App. LEXIS 1848, at *11, 2022 WL 188485, at *4 (11th Cir. 2022) (per curiam) (quoting Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1280 (11th Cir. 2017)). "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1273 (11th Cir. 2020) (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)). "[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants." Lamb v. Norwood, 899 F.3d 1159, 1162 (10th Cir. 2018). "The long and short of it is that diagnosing, monitoring, and managing conditions—even where a complete cure may be available—will often meet the 'minimally adequate medical care' standard that the Eighth Amendment imposes." Hoffer, 973 F.3d at 1273; see Thigpen, 941 F.2d at 1504. Furthermore, "the Eighth Amendment does not prohibit prison officials from considering cost in determining what type (or level) of medical care inmates should receive," nor is cost-consideration off-limits to the courts when reviewing claims. Hoffer, 973 F.3d at 1277. However, "if a particular course of treatment is indeed essential to 'minimally adequate care,' prison authorities can't plead poverty as an excuse

11

for refusing to provide it." Id.

Douglas's allegations are aimed at unidentified medical personnel employed by the corporate medical Defendants. He disputes the adequacy of their treatment and their medical judgment. As pleaded, such assertions do not rise to the level of a constitutional deprivation. Additionally, Douglas's allegations that "they" hoped that "they" would not have to pay for surgery if he made bond does not state a claim. (See Doc. 20 at 11). The "they" is not identified, and the allegations are not causally connected to Defendants Quality and South Baldwin. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (to state a § 1983 claim a plaintiff must establish a causal connection between a defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional); see also Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (emphasis added). Nor is the claim adequately developed to suggest that Douglas's treatment differed due to cost considerations so as to amount to a constitutional violation. Accordingly, Douglas has failed to state a claim against Defendants Quality and South Baldwin.

**IV. Conclusion.**

Based upon the foregoing reasons, it is recommended that Defendants Quality and South Baldwin be **DISMISSED with prejudice** from this action pursuant to 28 U.S.C. § 1915A(b)(1) inasmuch as Douglas has been provided opportunities to amend his claims against these Defendants and has failed to state a claim upon which relief may be granted against these Defendants. See Lee v. Alachua County, Fla., 461 F. App'x 859, 860 (11th Cir. 2012) (per curiam) (a *pro se* plaintiff must be given one opportunity to amend the complaint before the complaint is dismissed with prejudice). Because the complained of events occurred after Douglas was arrested on December 30, 2021 (see Doc. 20 at 4), the two-year statute of limitations for filing a § 1983 action in Alabama has not expired. See Jones v. Preuit & Mauldin, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc). Therefore, Douglas may refile his claims related to his medical care in another § 1983 action before the two-year statute of limitations expires if he is so inclined.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C.

636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**ORDERED** this **27th** day of **April, 2023.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE